May it please the Court, I'm Gilbert Levy. I represent the petitioner appellant Mr. Westman. There was substantial evidence in this case from which the jury could have concluded that Mr. Westman was not a participant in the murder, but nevertheless could have convicted him on the basis of the erroneous jury instruction. Primarily evidence that Mr. Westman was not present at the scene of the crime when the murder occurred. The medical examiner fixed the time of death between 7.30 p.m. and 8.00 p.m. There was evidence that Mr. Westman was at home at that time. He logged on to his computer at 7.20. His son had him home at 7.30. A neighbor in the victim's apartment indicated that he heard sounds of a struggle at 7.45. In addition, there – None of the evidence precludes his having actually participated. Well, it doesn't preclude it. I mean, I think the jury could have found otherwise, but the point is simply that the jury could have found that he wasn't there. If he wasn't there, then the evidence as to whether or not he intended – But they made it in the bed of what crime? Intent to threaten and harass the victim. I think a reasonable jury could have found on the basis of this evidence that Mr. Westman wasn't there, that he sent his – Just aiding and abetting some threats, and therefore they found him guilty of murder. They could have found him guilty of murder on the basis of the erroneous jury instruction. If the Court will recall, the instruction said that an accomplice is someone with knowledge of a crime rather than the crime. The Washington courts found that the instruction was erroneous. And couldn't the aiding and abetting commit the other crime? Pardon me? Who was the aiding and abetting to commit the other crime? I think the jury could have – a reasonable jury could have found from this evidence that the brother was sent over to the victim's apartment to deliver a note. The note was not indicative of intent to kill. If Mr. Westman was intending to kill the victim, it certainly seems implausible that he would have delivered such a note and left it at the scene of the crime. I think a reasonable jury could have found from these facts that the brother was sent over as an emissary to deliver the note. There was some sort of confrontation between the brother and the victim that – Hold on. What does the note say? I'm sorry. Remind me what the note said. This is the note that was in all caps? I think the note is quoted verbatim from the brief, but the tenor of the note was that it was a warning to the victim to stay away from the woman who was the apparent object of both of their affections. But it was a warning that said that you better stay away or you're going to get hurt. And again, if my client was intending to kill Mr. Stone, why would he have left a warning note at the scene of the crime? It seems to me that this was a confrontation that went awry and not a premeditated murder. And nevertheless, the jury could have found on the basis of the erroneous instructions that my client was guilty of murder. As to why this was an unreasonable application of established Supreme Court precedent to the facts and therefore reviewable by this court on habeas corpus, it seems to me that both the state court and the district court reviewing the state court decision focused exclusively on the prosecutor's theory of the case, tended to overlook and not discuss critical evidence. Well, counsel, isn't part of the problem, though, that the only charge was murder? There was no instruction, no theory arguing any type of intimidation or harassment. How was the jury to somehow cobble together in their mind that the crime that was being aided and abetted or of which Mr. Westman had knowledge was some uncharged, unargued theory of intimidation or harassment? Well, there was substantial evidence. Judge Windmill, there was substantial evidence of intimidation and harassment. The defense at trial was an alibi defense, and certainly the defense, through its presentation and its argument, tended to suggest rather strongly that Mr. Westman was not present at the scene of the crime. And based upon that presentation, the jury reasonably could have concluded. Okay. You're saying the prosecution argued that he was not present? No, the defense was an alibi defense. That was the whole tenor of the defense. They presented additional evidence that he wasn't there. For example, he was wearing a postman's uniform that evening. The one eyewitness saw two men in a vehicle that resembled Mr. Westman's vehicle but made no mention of a postman's uniform. So what I'm suggesting, Your Honor, is that with the alibi defense, which was, I think, presented rather forcefully by the defense, the jury could have concluded that Mr. Westman wasn't there, he was not a participant in the murder, he may not have known what was going on. But nevertheless, based upon the prosecutor's in-for-a-dime, in-for-a-dollar argument, could have concluded that he was guilty of first-degree murder. What is our standard of review? The State court here recognized that there was an error but found it harmless, right? They found it was harmless. That's correct. And so in order for you to win, in order for us to set aside the conviction of grand direct, we would have to say what about the finding of the State court? Ignored the evidence. I mean, I think that there's case law, which I cited in my brief, indicating that it was harmless. I'm sorry. They said it's harmless. I mean, they seem to have recognized all of what happened. It's not a question of evidence. And they made a judgment that he would have been convicted anyway. You know, what is the standard for that? It did not reasonably affect the verdict.  Yes. It seemed to me, Your Honor, that what the State court did that was unreasonable was that it focused exclusively on the arguments and didn't really look at the evidence, which was completely inconsistent with the theory that Mr. Westman was a participant in the murder. And not having recognized and discussed that evidence suggests to me at least that the State court decision was unreasonable. If I may, I'd like to reserve the rest of my time. I understand your answer at all, and that's the heart of your case. You're not going to win unless you manage to persuade us that what the trial court did, what the State trial court did, fell below some threshold of acceptability. You know, it's a judgment as to whether or not a finding of harmless error or a converse finding of prejudicial error is a prediction or a hypothetical reconstruction of events, saying if X had been done differently, the result would or would not have been different. Let me just ask you once again, what is it that – how can we say that? I mean, the trial court obviously – I mean, the State court obviously understood what was going on. This was not a case where it was confused, where it had the cast of characters in the wrong place or the wrong time. It looked at all that evidence and says, look, there was a word change in the instructions. The judge used an A instead of a they, and we realize that, strictly speaking, if we're sitting here parsing it as a linguistic matter, there's a big difference between the two, but we don't think it would make a big difference to the jury. How do we reverse that? What would we need to do to be able to reverse that? It seems to me, Judge Kuczynski, that this type of harmless error analysis is essentially fact-based. There's no argument that the jury instruction was erroneous. The question is whether or not this was a substantial misapplication of the facts to the law. And with all due respect to the law – I have no idea what they mean. The trial court gives an instruction that's wrong by one word, and I'm not denigrating, I'm not diminishing the importance of one word. One word can sometimes really be important. But here a state court has looked at the instruction, has looked at the error, and has said, we think the result would have been the same even if the trial judge had used the correct word. And I'm just wondering how we go about reversing that. What do we have to find? What do we have to be convinced of? If the state court overlooked and did not address critical facts, which might have changed it. Is that the case here? Yes. Okay. And what did the state court overlook? The whole point that he wasn't there at the time, that they didn't deal with that. I mean, there was a substantial alibi defense. Well, you say he wasn't there at the time, but that's not – you act as if that's just absolutely written in stone. It might be written in your particular Rosetta Stone, but it's not necessarily true, is it? Well, it's certainly not necessarily true, but it was a credible defense based upon the evidence. And if a reasonable jury concluded that there was doubt as to whether or not he wasn't there at the time. Well, wait. I thought the government's theory was that he was the trigger man. In fact, there's, I think, references to that in closing argument. But obviously, the accomplice instruction was to take into account the evidence put on by the defense that he may not have been there. He could still be guilty of the same charge if he had somehow aided and abetted or served as an accomplice. And that was the whole purpose of the instruction, correct? Well, the State's theory was that Mr. West – either Mr. Westman or his brother did the shooting, but that both were there. And the viability of the State's theory was dependent on the notion that Mr. Westman was there with the brother so that both were direct participants in the murder. But he could be an accomplice even if he wasn't there, correct? He could be an accomplice of murder even if he was not present. Yes, if he wasn't there. But assuming his non-presence, there was somewhat ambiguous evidence as to whether or not he harbored a premeditated intent to kill the victim. Well, that's what brings me back to my concern. I mean, even if he's not there, he could have been an accomplice. But I thought your argument was that if he wasn't there, the jury might have felt that the crime that he was perhaps aiding in some fashion was this intimidation or harassment, and that that has to be kind of the focus of any theory upon which you can hang your hat, correct? Correct. But that's why I come back to this concern that it was never instructed. There was no charges filed along that line, no direct argument from the prosecutor that they should consider that in any way. So the jury's left to somehow decide that maybe that's a crime, and that's what Mr. Westman was in fact serving as an accomplice to. It seems to me, Your Honor, that if the jury entertained doubt as to whether or not Mr. Westman was present at the time of the murder, it would also necessarily have to entertain doubt as to whether or not he had knowledge that the homicide was taking place. I mean, I think that with conflicting evidence of this sort, the erroneous jury instruction would have suggested to the jury that they could have convicted him even if he wasn't present and even if he didn't intend to kill the victim. And we have to apply that under the extremely deferential standard that the State has, an objectively unreasonable application of harmless error analysis. Correct. Okay. All right. I think I've used up all my time. Thank you. You owe us some. We'll send you a bill. Well, I'm sorry. If the Court has further questions, I'd be happy to address them. We know that.  May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent. Excuse me. To obtain relief in this case, the Petitioner must show that the error rose to the level of the constitutional error, that that error caused actual and substantial prejudice, and that the State court decision was an objectively unreasonable application of Supreme Court precedent. It has not made that showing, and, therefore, the District Court corrected it. The in for a dime, in for a dollar comment doesn't help your case. No, it does not, Your Honor. I mean, it's the kind of thing the prosecutor obviously was thinking that if he was an accomplice for any crime, then he could get in for murder. In other cases where there has been prejudice from this erroneous type of instruction, the prosecutor has used that in for a dime, in for a dollar argument to specifically argue that the defendant is guilty because he knowingly participated or aided some crime, and then a greater crime later occurred that was not the crime charged, or he did not knowingly aid the crime that he was convicted of. That is not the case here. The prosecutor never argued that the defendant was guilty of and knowingly aided or participated in any crime less than the crime of murder. It doesn't matter what the level of murder was under the ---- What was the point of that line? The in for a dime, in for a dollar, that used to be a phrase the prosecutors used in the past. No, no. I understand that that's a phrase taken from another context, but it was used in this context. It must have been used for a reason and in a context of its own, and since you admit that it was the wrong phrase to use. Sure. The phrase in this particular case was used because there was evidence presented that might suggest that the defendant's brother actually pulled the trigger. The prosecutor strenuously argued and repeatedly argued the defendant was the shooter. He's the one who fired the gun. But even if it was his brother, he's still guilty because it doesn't matter who actually fired the weapon. If he knowingly participated in the crime of murder, he is still guilty of murder. Prosecutors need a new phrase, a new metaphor. It doesn't matter whether you borrow a dollar or you earn a dollar. Something like that. Something like that. Some phrase like that that doesn't suggest a lesser and a greater. It suggests some quantum of relationship to the same crime. I'm not going to suggest to you how you should argue. Yes, and I believe they've moved away from that particular argument for this reason that it causes concern. But in this particular case, there is no showing of actual prejudice. Petitioner's counsel repeatedly argues that the jury could have found him guilty based on a lesser crime. That's not the standard. That's more of a standard of a, is there a possibility of error, and that's not the standard of actual prejudice. There must be an actual showing that this error affected the jury's verdict, and that without this error, the jury would not have convicted him of murder. We would have to find at least it had a substantial and injurious effect, right? Yes. It must be substantial and injurious. And the question of the jury. Well, that's not so hard to find. The problem is that we have to overcome the contrary finding of the state court. That's the big hurdle. Well, with respect, Your Honor, I would argue that it is difficult to show actual prejudice, but you are correct. Even if the state court was wrong and there was actual prejudice, as long as the state court's decision was objectively reasonable, relief is still barred. And in this case, the prosecutor never charged the defendant with knowingly ---- first of all, the prosecutor's argument was the defendant was the principal. The defendant was the one who fired the weapon and killed Mr. Stone. The prosecutor's arguments regarding the accomplice were never, if he knowingly aided in the crime of harassment, you can find him guilty of murder. The prosecutor never argued that. There was never instruction to that effect. There was never instructions on lesser crimes, the elements of lesser crimes. This entire trial focused on the defendant's actual commission of the crime of murder and his knowing participation in the crime of murder. It's a little odd. They tried only him, right? They didn't try the brother. I do not know why, Your Honor. But they didn't. The fact is they didn't. So they tried on a theory that they are both guilty, that they both bear some culpability in the crime, and yet the other guy is. I was not the prosecutor in the case that's handled by the county. I don't know all the facts that went into their charging decision. So let's see, we don't know that the brother was there at all, right? We do have evidence. The witness saw two men in the defendant's car, and one of the men matched the description of the brother. So we know that he was at least at the scene of the crime. We also know that the brother was seen later with a weapon that resembled the weapon that was used for murder. Frankly, my initial impression reviewing the briefing was that the critical question was the lack of any theory on the part of the prosecution that would support a jury perhaps being misled in some fashion. But as I heard Mr. Levy arguing, it struck me that the defense theory is what may have created the potential for some confusion with the jury, because their theory was that the petitioner here, the defendant, Mr. Westman, was simply not present. And if he was not present, then that leaves the jury open to, I guess, a lot of speculation and concern about what role, if any, Mr. Westman may have actually played in the jury out, including perhaps exactly what Mr. Levy is arguing here, that they were trying to intimidate the victim, and it became an intimidation gone bad, which then Mr. Westman becomes responsible for as an accomplice, which would be a misapplication of the law. What's wrong with that? The state court addressed that issue, Your Honor, and this is at Excerpts of Record, page 36. And discussing Mr. Westman's alibi defense, they said that, in any event, the state argued that Mr. Westman knowingly participated in the only crime presented to the jury, that of murder. Had the jury believed the alibi, it would have acquitted him. There was no theory presented by the state where the jury might have inferred that Westman was a knowing accomplice to a crime other than murder. So the jury would have acquitted him. So at least what I've reviewed of the transcript and the closing arguments, there doesn't appear to be anything like that in which the government or the state argued that. But I'm raising the question whether the defense theory, which was to suggest he was not present, somehow has the same effect. No, Your Honor. That would not be enough to make actual prejudice from this error to even cause an error in the first place. In other words, it requires us to speculate as to what the jury might have done and to, I guess, more accurately, in light of Judge Kaczynski's earlier questions, conclude that the State court got it wrong in not engaging in that speculation. Exactly, Your Honor. And, again, it goes back to the way Petitioner's counsel is arguing. He's saying the jury could have found this. That is not the standard. The standard is, did they find that? They had to have found it this way for there to be prejudice. Or is there a, again, or is there a substantial chance that they misapplied the law so as to have an injurious effect on the process and the defendant? Yes, Your Honor. Yes, Your Honor. Thank you. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Fernandez, Winmill